**CAMERON PARISH POLICE JURY**

v.

**Walter J. HICKEL, Secretary of the Interior.**

**John S. GOTTSCHALK, Director, Bureau of Sport Fisheries and Wildlife**

v.

**CAMERON PARISH SCHOOL BOARD.**

Civ. A. No. 14206.

United States District Court
W. D. Louisiana,
Lake Charles Division.

June 13, 1969.

**690**

Frank T. Salter, Jr., Dist. Atty., Lake Charles, La., J. B. Jones, Jr., Asst. Dist. Atty., Cameron, La., for plaintiff and third-party defendant.

Paul H. Cullinan, Counsel, Bureau of Sport Fisheries and Wildlife, United States Dept. of the Interior, Washington, D. C., Edward L. Shaheen, U. S. Atty., Shreveport, La., for defendants and third-party plaintiffs.

EDWIN F. HUNTER, Judge:

This is a proceeding for judicial review of a decision of the Secretary of the Interior terminating the payment of certain funds to Cameron Parish.

Cameron Parish, Louisiana, is the home of Lacassine and Sabine National Wildlife Refuges, both of which have produced and are producing income. The disposition of this income is provided for by the Refuge Revenue Sharing Act of 1935. This Act provides: "The Secretary, at the end of each fiscal year, shall pay, out of the net receipts in the fund (after payment of necessary expenses) for such fiscal year, which funds shall be expended solely for the benefit of public schools and roads as follows:

"(1) to each county  *  *  *."

The Act then provides a formula for arriving at the amount to be paid, irrelevant for the purposes of this case because the amounts are not in dispute.

Title VI of the Civil Rights Act of 1964, and the implementing regulations (43 C.F.R. Part 17), particularly 43 C.F.R. 17.4, require that every application for Federal financial assistance shall, as a condition to its approval, be accompanied by the requisite assurance as to non-discrimination in the form specified by the head of the bureau or office concerned.

The Government duly requested that the Parish execute an assurance as specified. On November 1, 1965, the Bureau received such assurance, with the words, "Public Schools" deleted. On February 4, 1966, the Bureau received an assurance which was unqualified. On August 15, 1966, the Bureau advised that the Department of Health, Education and Welfare had determined that the Parish was in non-compliance with Title VI of the Act; and the Police Jury, in reply, indicated its lack of jurisdiction, and later restated this position. The Secretary views as the essential issue:

" *  *  * whether or not under these facts, an assurance covering roads alone and executed by the Police Jury was a sufficient assurance under 43 CFR 17.4(a) (1) to permit payment under the Refuge Revenue Sharing Act of 1935."

The Police Jury contends that the Refuge Revenue Sharing Act (16 U.S.C. § 715s(c), requires only transmission of the funds to the county, without stipulation as to the unit of local government which should receive them. Cameron takes the flat position that responsibility for the operation of public schools lies in the school board (citing Art. 12, Sections 10, 15, La.Const.1921 and La. Revised Statutes, 17:81, 17:51, 17:52), whereas responsibility for the roads lies with the Police Jury. From this premise, the Police Jury submits: (1) that funds to be used for public schools must go to the school board, and funds for roads to the Police Jury; (2) that the manifest and express Congressional intent reflected in the Act does not provide guidelines for the apportionment of funds between local agencies; that use of the funds by the Police Jury for road purposes carries out the Congressional intent; and that the money should go to the Police Jury to be used for roads, in keeping with the objective of both statutes.

The Hearing Examiner recommended that payment of the funds withheld from Cameron Parish, Louisiana, to date, and future funds which may accrue under the Refuge Revenue Sharing Act, be made, on condition that the Police Jury not pay, use or encumber any such funds for school purposes until a satisfactory assurance shall be filed by the School Board with the appropriate agency as to compliance with the Act.

The Government insists that the Refuge Revenue Sharing Act divorces it from the responsibility for apportionment of revenues between local agencies of the Parish. It then urges that the Act provides funds for schools and roads, and that thus the failure to obtain a satisfactory assurance as to schools must undermine the right of the Police Jury to receive any funds for roads.

In Louisiana, the responsibility for the operation of public schools lies in the parish school board. This agency is composed of members elected by the people of the parish. (See Article 12, Sections 10 and 15, Louisiana Constitution of 1921; Louisiana Revised Statutes of 1950, 17:81, 17:51, 17:52). On the other hand the responsibility for roads lies with the parish police jury, which is an entirely separate agency from the school board. (Louisiana Revised Statutes of 1950, 33:1236(2)). Cameron insists that it is the duty of the Secretary of the Interior to transmit funds to be used for public schools to the Cameron Parish School Board, and fund to be used for roads to the Cameron Parish Police Jury.

The Civil Rights Act of 1964, and the regulations promulgated thereunder, prohibit discrimination under any program or activity receiving federal financial assistance (42 U.S.C.A. § 2000d) and provides for obtaining compliance by the termination of assistance "to any recipient as to whom there has been an express finding * * * of a failure to comply with such requirement." Appropriate federal agencies are authorized to issue regulations to effectuate the statute, but there are two precise limitations:

(a) rules, regulations or orders "shall be consistent with achievement of the objectives of the statute authorizing the financial assistance * * *." (42 U.S.C.A. § 2000d-1)

(b) any "termination or refusal (of assistance) shall be limited to the particular political entity, or part thereof, or other recipient as to whom such a finding (of non-compliance) has been made and, shall be limited in its effect to the particular program, or part thereof, in which such noncompliance has been so found." (42 U.S.C.A. § 2000d-1).

Obviously, it is the intent of the Congress that the Secretary is to apply the provisions of the Civil Rights Act of 1964 so as to be consistent with and in harmony with the objectives of the statute authorizing the financial assistance. The objective of the financial assistance authorized by the Refuge Sharing Act was to grant funds to local government agencies as a substitute for the loss of tax revenues from local ad valorem property taxes. The Civil Rights Act must be applied consistently with its objective. This can be done here.

It is conceded that there is no evidence of any discrimination on the part of the Cameron Parish Police Jury. This agency has submitted an act of assurance to the Bureau, wherein the Bureau is assured of compliance by the Cameron Parish Police Jury. The Cameron Parish Police Jury is powerless to execute an assurance to the Bureau involving public schools. This would constitute a fraud. The legislative history of Title VI of the Civil Rights Act is relevant. Senator Hubert H. Humphrey, the floor manager of the bill in the Senate debate said:

"The title is designed to limit any termination of Federal assistance to the particular offenders in the particular area where the unlawful discrimination occurs. Since this was our intention, we have made this specific in the provisions of Title VI by adding language to 602 to spell out these limitations more precisely." (110 Cong. Rec., p. 12289, June 4, 1964).

Senator Pastore specifically recognized that Title VI does not authorize any cut-off or limitation of *highway* funds because of *school segregation*. (110 Cong.Rec., p. 6843, Apr. 7, 1964). That is exactly the result which would be effectuated here.

The language, history and purpose of the Refuge Revenue Sharing Act

and other similar measures require the conclusion that the allocation of distributed funds among local agencies is the exclusive responsibility of local governmental units. King County v. Seattle School District No. 1, 263 U.S. 361, 44 S.Ct. 127, 68 L.Ed. 339. The public schools and public roads are provided and maintained by the state or its subdivisions, and the moneys granted by the United States are assets in the hands of the state, to be used for the specified purposes as it deems best. Here, prior to the requirement of an assurance from participating entities, the Cameron Parish Police Jury and the Cameron Parish School Board shared in equal proportion the proceeds from the Act. Here, since the School Board is not in compliance, it can receive nothing. However, the Police Jury is in compliance and should receive the proceeds dedicated to it by the Parish authorities for the use of roads. We hold that under the circumstances of this case, the allocation heretofore made by the Parish of equal proportions to one public body for roads and to another for schools should be honored by the Government as a valid exercise of the exclusive responsibility of the local government units involved.

## FINDINGS OF FACT

1. There is no supreme governing entity for the Parish of Cameron, but rather the several governmental functions are divided between the Police Jury, School Board, Sheriff, and other elected officials.

2. The Police Jury of Cameron Parish is a separate and distinct political entity from the Cameron Parish School Board.

3. The Police Jury has no authority over the Cameron Parish School Board and cannot in any way force it to comply with the Civil Rights Act of 1964.

4. The Cameron Parish School Board is not in compliance with the Civil Rights Act of 1964 and is therefore *not* eligible to participate in any of the proceeds from the Refuge Revenue Sharing Act.

5. The Cameron Parish Police Jury has complied with the Civil Rights Act and is therefore eligible to participate in the proceeds from the Refuge Revenue Sharing Act.

6. Prior to the requirements of an assurance from participating entities, the Cameron Parish Police Jury and the Cameron Parish School Board shared in equal proportion the proceeds from the Refuge Revenue Sharing Act.

## CONCLUSIONS OF LAW

1. The Refuge Revenue Sharing Act (16 U.S.C.A. § 715 et seq.) requires only transmission of the funds involved to the county (parish) without stipulation as to the unit of local government which should receive these funds.

2. It is not within the scope of authority granted to the Department of the Interior under the Refuge Revenue Sharing Act to withhold funds from any participant (16 U.S.C.A. § 715 et seq.).

3. It is the Civil Rights Act of 1964 which grants to the Department of the Interior the authority to withhold funds from participants under Refuge Revenue Sharing Act, but only if the participants do not comply with the Civil Rights Act (42 U.S.C.A. § 2000d–1).

4. The power to withhold funds granted by the Civil Rights Act is specifically limited to "the particular political entity, or part thereof, or other recipient as to whom such a finding (of non-compliance) has been made and, shall be limited in its effect to the particular program, or part thereof, in which such noncompliance has been so found." 42 U.S.C.A. § 2000d–1.

5. The Department of the Interior has the authority to withhold funds from the noncomplying Cameron Parish School Board. It does not have the authority to withhold funds from the Cameron Parish Police Jury which has complied.

6. Because the Cameron Parish School Board and Police Jury previously shared these funds on a 50-50 basis, the Department of the Interior may not re-

duce payments made to Cameron Parish by any more than 50%. Therefore, it is the holding of this Court that the Department of the Interior pay to the Cameron Parish Police Jury one-half of all funds held in escrow in this case, plus one-half of all future funds payable to Cameron Parish under the Refuge Revenue Sharing Act. If it is the feeling of the Department of the Interior that they cannot divide these funds, then they are perfectly free to pay all of the funds to the Cameron Parish Police Jury, coupled with a stipulation that none of the funds may be in any way distributed to the Cameron Parish School Board.